# Attachment A

## TRADEMARK ASSIGNMENT & LICENSE AGREEMENT

This Trademark Assignment and License Agreement (this "Agreement") is entered into as of January 1, 2010 (the "Effective Date") by and between Richard Rizzuto an individual formed residing at 25922 Tealwood Drive, Daphne, AL 36526 ("ASSIGNOR") and Chiropartners, Inc. a company formed pursuant to Alabama law with a place of business at 1600 N. McKenzie Street, Foley, AL 36535 ("ASSIGNEE"). ASSIGNOR and ASSIGNEE may be referred to herein individually as a "Party" or collectively as the "Parties" to this Agreement.

**WHEREAS**, Richard Rizzuto is the owner of the Trade Mark "Back on Track [Chiropractic and Wellness Center]" and intends to assign that mark to his company, Chiropartners, Inc., doing business under that (Mark) name

**NOW, THEREFORE**, in consideration of the foregoing premises, the mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR and ASSIGNEE agree as follows:

1. <u>ASSIGNMENT</u>. ASSIGNOR hereby fully and completely, forever and irrevocably conveys, transfers, assigns and otherwise fully and completely surrenders to ASSIGNEE all rights, title, and interest in the Mark and the goodwill of the business symbolized by the Mark. [Serial No. 76/080988].

2. <u>LICENSE</u>. For the purpose of promoting chiropractic services, ASSIGNEE hereby grants ASSIGNOR a royalty-free, perpetual (except as terminable herein), non-exclusive, non-sublicensable license to reproduce, use, and display the Mark on the terms and conditions set forth herein. ASSIGNOR acknowledges and agrees that ASSIGNEE and its licensors shall retain all right, title and interest in and to the Mark, subject only to the license granted herein.

3. <u>LIMITATIONS</u>. ASSIGNOR agrees not to edit, alter or otherwise modify the Mark without the prior written consent of ASSIGNEE. All adaptations, derivative works, modifications, enhancements, translations and the like, including any design marks, (collectively, "Derivations") of the Mark shall belong to ASSIGNEE, and ASSIGNOR shall and does hereby assign all of ASSIGNOR's right, title and interest in and to Derivations to ASSIGNEE. ASSIGNOR shall cooperate fully (including but not limited to assisting with and executing necessary documentation) with any efforts ASSIGNEE may make for the purpose of securing and perfecting ASSIGNEE's rights in and to the Mark or the Derivations. ASSIGNOR's use of the Mark shall be expressly subject to the reasonable control of ASSIGNEE according to the standards set forth below. ASSIGNEE and ASSIGNOR agree that so long as ASSIGNOR is in material compliance with all applicable state and federal laws, at all times conducts its activities under this Agreement in a lawful manner and maintains all licenses required to provide the Licensed Services, and continues to offer services that are of professional quality in the industry and in all cases, maintain the reputation and quality associated with the Mark, ASSIGNOR shall meet ASSIGNEE's quality standards with respect to use of the Mark (the "Quality Standards"). ASSIGNEE shall have the right to inspect any materials displaying the Mark for compliance with the Quality Standards. Notwithstanding the foregoing, ASSIGNOR shall be solely responsible for complying with all laws and regulations and obtaining all necessary or

appropriate permits, licenses and approvals, applicable or pertaining to the advertising, marketing, promotion and/or provision of the Licensed Services or promotional materials developed for the Licensed Services.

4. <u>WARRANTY DISCLAIMER</u>. ASSIGNEE LICENSES THE MARK ON AN AS-IS BASIS AND EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. ASSIGNEE DOES NOT WARRANT THAT THE MARK WILL BE NON-INFRINGING OR WILL MEET ASSIGNOR'S NEEDS. ASSIGNEE DOES NOT REPRESENT OR WARRANT THAT IT WILL MAINTAIN ANY APPLICATIONS OR REGISTRATIONS FOR THE MARK.

5. <u>TERM AND TERMINATION</u>. The term of this Agreement shall commence on the Effective Date and shall continue until terminated in accordance with this Agreement. ASSIGNEE shall have the right to terminate this Agreement immediately, without penalty, if ASSIGNEE ceases use of the Mark or if ASSIGNOR (i) materially breaches this Agreement (including, without limitation, failing to meet ASSIGNEE's Quality Standards) and does not cure such breach within thirty (30) days of written notice of the breach by ASSIGNEE; or (ii) is dissolved or ceases to operate in the ordinary course or becomes subject to any federal, state or local investigation. Upon and after the termination of this Agreement for any reason (the "Termination Date") (a) all rights granted herein shall revert to the ASSIGNEE, and (b) ASSIGNOR shall immediately cease to use the Mark; provided, however, if the termination of this Agreement is not due to an event specified above in subsections (i) or (ii) of this Section 5, ASSIGNOR may deplete or destroy any promotional materials it may have for a period not to exceed one hundred eighty (180) days following the Termination Date, and ASSIGNOR shall certify to ASSIGNEE in writing that it has complied with these requirements. Section 6, Section 11 and any confirmation or assignment of ownership shall survive any expiration or termination of this Agreement.

6. <u>COVENANTS</u>. ASSIGNOR covenants that it shall not at any time challenge or contest the validity, ownership, title and registration of ASSIGNEE in and to the Mark or any Derivations, including, without limitation, (i) using or misusing the Mark with any goods or services other than Licensed Services in [the Licensed Territory] or promotional materials therefor; (ii) using or misusing the Mark in a manner (a) not in accordance with this Agreement; (b) which would diminish or tend to diminish the strength of the Mark or the value of the goodwill represented by the Mark; (iii) claiming or alleging rights in the Mark other than those expressly granted by this Agreement, or (iv) attempting to register the Mark with the trademark office, a domain name registrar, or other similar offices of any nation, state, territory, province, or instrumentality thereof other than in the name of ASSIGNEE and with ASSIGNEE's written consent. ASSIGNOR shall not use the Mark in any parody or in any other manner which disparages or tends to disparage the goods, services, goodwill, or reputation of ASSIGNEE or any other person or entity. ASSIGNOR acknowledges and agrees that each and every use of the Mark, and the goodwill associated therewith, shall inure to the benefit of ASSIGNEE.

7. <u>LIMITATION OF LIABILITY</u>. ASSIGNEE SHALL NOT HAVE ANY LIABILITY TO ASSIGNOR FOR ANY DIRECT, INDIRECT, SPECIAL, CONSEQUENTIAL, OR

PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, REVENUE OR USE INCURRED BY ANY PARTY, WHETHER IN AN ACTION IN CONTRACT, BREACH OF WARRANTY OR TORT, ARISING OUT OF OR RELATING TO THIS AGREEMENT, EVEN IF ASSIGNEE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8. <u>GENERAL</u>.

(a)     Notices. All notices under this Agreement shall be given in writing via overnight mail to the addresses set forth on the first page of this Agreement or such other address as either party may substitute by notice hereunder, and all such notices given in accordance herewith shall be deemed as given on the next two (2) business days following the date of mailing.

(b)     Headings. The Section headings in this Agreement are for identification purposes only and shall not affect the interpretation of this Agreement or any part hereof.

(c)     Severability. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement.

(d)     Waiver. The waiver by either Party of any breach of any provision of this Agreement shall not be construed to be either a waiver of that Party's rights regarding any succeeding breach of any such provision or a waiver of the provision itself.

(e)     Assignment. ASSIGNOR shall not assign all or any part of its rights or obligations by operation of law or otherwise under this Agreement without the prior written consent of ASSIGNEE, which may be withheld in ASSIGNEE's sole discretion. Any permitted assignment shall be binding on and inure to the benefit of the Party's successors and assigns.

(f)     Entire Agreement. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all previous proposals, both oral and written, negotiations, representations, commitments, writings and all other communications between the Parties, including without limitation, the Memorandum of Understanding referenced herein. This Agreement may not be modified except by an instrument in writing signed by the Parties.

(g)     Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama, without reference to its conflicts of laws provisions. Any action at law, suit in equity, or other judicial proceeding for the enforcement of this Agreement or any provision thereof shall take place in the State of Alabama, in Baldwin County. The Parties hereby consent to the personal jurisdiction of the state and federal courts in Jefferson County, Alabama, in any dispute arising from or relating to this Agreement.

      (h)    Relationship of the Parties. Nothing contained in this Agreement shall be deemed or construed as creating a joint venture or partnership between ASSIGNOR and ASSIGNEE. Neither Party, by virtue of this Agreement, is authorized as an agent, employee or legal representative of the other. Except as specifically set forth herein, neither Party shall have the power to control the activities and operations of the other, and their status is, and at all times will continue to be, that of independent contractors.

      (i)    Authority. The Parties warrant they have the authority to enter into the Agreement.

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Agreement as of the date first written above.

ACCEPTED AND AGREED:

[ASSIGNOR]

By: *[signature]*
Print Name: Richard Rizzuto
Title: Self

[ASSIGNEE]

By: *[signature]*
Print Name: Richard Rizzuto
Title: President - Chiropartner Inc.

1119644.2

4

## TRADEMARK ASSIGNMENT & LICENSE AGREEMENT

This Trademark Assignment and License Agreement (this "Agreement") is entered into as of January 1, 2010 (the "Effective Date") by and between Beth Scherer an individual formed residing at ~~~~~~~~~~~~ ("ASSIGNOR") and Back On Track Chiropractic & Wellness Center, P.C. a company formed pursuant to Alabama law with a place of business at ~~1301 Sherwood Drive, Oxford, Alabama 36203~~ ("ASSIGNEE"). ASSIGNOR and ASSIGNEE may be referred to herein individually as a "Party" or collectively as the "Parties" to this Agreement.

*[handwritten margin: 3657 Cahaba Heights Rd., Birmingham AL 35243]*

WHEREAS, Beth Scherer is a co-owner of the Trade Mark "Back on Track [Chiropractic and Wellness Center]" and intends to assign her rights in that mark to her company, Back On Track Chiropractic & Wellness Center, P.C., doing business under that (Mark) name.

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ASSIGNOR and ASSIGNEE agree as follows:

1. **ASSIGNMENT.** ASSIGNOR hereby fully and completely, forever and irrevocably conveys, transfers, assigns and otherwise fully and completely surrenders to ASSIGNEE all rights, title, and interest in the Mark and the goodwill of the business symbolized by the Mark. [Serial No. 76/080988].

2. **LICENSE.** For the purpose of promoting chiropractic services, ASSIGNEE hereby grants ASSIGNOR a royalty-free, perpetual (except as terminable herein), non-exclusive, non-sublicensable license to reproduce, use, and display the Mark on the terms and conditions set forth herein. ASSIGNOR acknowledges and agrees that ASSIGNEE and its licensors shall retain all right, title and interest in and to the Mark, subject only to the license granted herein.

3. **LIMITATIONS.** ASSIGNOR agrees not to edit, alter or otherwise modify the Mark without the prior written consent of ASSIGNEE. All adaptations, derivative works, modifications, enhancements, translations and the like, including any design marks, (collectively, "Derivations") of the Mark shall belong to ASSIGNEE, and ASSIGNOR shall and does hereby assign all of ASSIGNOR's right, title and interest in and to Derivations to ASSIGNEE. ASSIGNOR shall cooperate fully (including but not limited to assisting with and executing necessary documentation) with any efforts ASSIGNEE may make for the purpose of securing and perfecting ASSIGNEE's rights in and to the Mark or the Derivations. ASSIGNOR's use of the Mark shall be expressly subject to the reasonable control of ASSIGNEE according to the standards set forth below. ASSIGNEE and ASSIGNOR agree that so long as ASSIGNOR is in material compliance with all applicable state and federal laws, at all times conducts its activities under this Agreement in a lawful manner and maintains all licenses required to provide the Licensed Services, and continues to offer services that are of professional quality in the industry and in all cases, maintain the reputation and quality associated with the Mark, ASSIGNOR shall meet ASSIGNEE's quality standards with respect to use of the Mark (the "Quality Standards"). ASSIGNEE shall have the right to inspect any materials displaying the Mark for compliance with the Quality Standards. Notwithstanding the foregoing, ASSIGNOR shall be solely responsible for, complying with all laws and regulations and obtaining all necessary or appropriate permits, licenses and approvals, applicable or pertaining to the advertising,

224301.1

marketing, promotion and/or provision of the Licensed Services or promotional materials developed for the Licensed Services.

4. WARRANTY DISCLAIMER. ASSIGNEE LICENSES THE MARK ON AN AS-IS BASIS AND EXPRESSLY DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. ASSIGNEE DOES NOT WARRANT THAT THE MARK WILL BE NON-INFRINGING OR WILL MEET ASSIGNOR'S NEEDS. ASSIGNEE DOES NOT REPRESENT OR WARRANT THAT IT WILL MAINTAIN ANY APPLICATIONS OR REGISTRATIONS FOR THE MARK.

5. TERM AND TERMINATION. The term of this Agreement shall commence on the Effective Date and shall continue until terminated in accordance with this Agreement. ASSIGNEE shall have the right to terminate this Agreement immediately, without penalty, if ASSIGNEE ceases use of the Mark or: if ASSIGNOR (i) materially breaches this Agreement (including, without limitation, failing to meet ASSIGNEE's Quality Standards) and does not cure such breach within thirty (30) days of written notice of the breach by ASSIGNEE; or (ii) is dissolved or ceases to operate in the ordinary course or becomes subject to any federal, state or local investigation. Upon and after the termination of this Agreement for any reason (the "Termination Date") (a) all rights granted herein shall revert to the ASSIGNEE, and (b) ASSIGNOR shall immediately cease to use the Mark; provided, however, if the termination of this Agreement is not due to an event specified above in subsections (i) or (ii) of this Section 5, ASSIGNOR may deplete or destroy any promotional materials it may have for a period not to exceed one hundred eighty (180) days following the Termination Date, and ASSIGNOR shall certify to ASSIGNEE in writing that it has complied with these requirements. Section 6, Section 11 and any confirmation or assignment of ownership shall survive any expiration or termination of this Agreement.

6. COVENANTS. ASSIGNOR covenants that it shall not at any time challenge or contest the validity, ownership, title and registration of ASSIGNEE in and to the Mark or any Derivations, including, without limitation, (i) using or misusing the Mark with any goods or services other than Licensed Services in [the Licensed Territory] or promotional materials therefor; (ii) using or misusing the Mark in a manner (a) not in accordance with this Agreement; (b) which would diminish or tend to diminish the strength of the Mark or the value of the goodwill represented by the Mark; (iii) claiming or alleging rights in the Mark other than those expressly granted by this Agreement, or (iv) attempting to register the Mark with the trademark office, a domain name registrar, or other similar offices of any nation, state, territory, province, or instrumentality thereof other than in the name of ASSIGNEE and with ASSIGNEE's written consent. ASSIGNOR shall not use the Mark in any parody or in any other manner which disparages or tends to disparage the goods, services, goodwill, or reputation of ASSIGNEE or any other person or entity. ASSIGNOR acknowledges and agrees that each and every use of the Mark, and the goodwill associated therewith, shall inure to the benefit of ASSIGNEE.

7. LIMITATION OF LIABILITY. ASSIGNEE SHALL NOT HAVE ANY LIABILITY TO ASSIGNOR FOR ANY DIRECT, INDIRECT, SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, REVENUE OR USE INCURRED BY ANY PARTY, WHETHER IN AN

2

ACTION IN CONTRACT, BREACH OF WARRANTY OR TORT, ARISING OUT OF OR RELATING TO THIS AGREEMENT, EVEN IF ASSIGNEE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8. GENERAL.

(a) Notices. All notices under this Agreement shall be given in writing via overnight mail to the addresses set forth on the first page of this Agreement or such other address as either party may substitute by notice hereunder, and all such notices given in accordance herewith shall be deemed as given on the next two (2) business days following the date of mailing.

(b) Headings. The Section headings in this Agreement are for identification purposes only and shall not affect the interpretation of this Agreement or any part hereof.

(c) Severability. If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, such determination shall not affect the validity or enforceability of any other part or provision of this Agreement.

(d) Waiver. The waiver by either Party of any breach of any provision of this Agreement shall not be construed to be either a waiver of that Party's rights regarding any succeeding breach of any such provision or a waiver of the provision itself.

(e) Assignment. ASSIGNOR shall not assign all or any part of its rights or obligations by operation of law or otherwise under this Agreement without the prior written consent of ASSIGNEE, which may be withheld in ASSIGNEE's sole discretion.

Any permitted assignment shall, be binding on and inure to the benefit of the Party's successors and assigns.

(f) Entire Agreement. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all previous proposals; both oral and written), negotiations, representations, commitments, writings and all other communications between the Parties, including without limitation, the Memorandum of Understanding referenced herein. This Agreement may not be modified except by an instrument in writing signed by the Parties.

(g) Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama, without reference to its conflicts of law provisions. Any action at law, suit in equity, or other judicial proceeding for the enforcement of this Agreement or any provision thereof shall take place in the State of Alabama, in Baldwin County. The Parties hereby consent to the personal jurisdiction of the state and federal courts in Jefferson County, Alabama, in any dispute arising from or relating to this Agreement.

(h) Relationship of the Parties. Nothing contained in this Agreement shall be deemed or construed as creating a joint venture or partnership between ASSIGNOR and ASSIGNEE. Neither Party, by virtue of this Agreement, is authorized as an agent, employee or

2240v1.1  3

legal representative of the other. Except as specifically set forth herein, neither Party shall have the power to control the activities and operations of the other, and their status is, and at all times will continue to be, that of independent contractors.

(i) Authority. The Parties warrant they have the authority to enter into the Agreement.

IN WITNESS WHEREOF, the Parties have caused their duly authorized representatives to execute this Agreement as of the date first written above.

ACCEPTED AND AGREED:

[ASSIGNOR]

By: _Beth Scher, PC_

Print Name: _Beth Scher, PC_

Title: _President, Back on Track Chiropractic, PC_

[ASSIGNEE]

By: _Beth Scher, PC_

Print Name: _Beth Scher, PC_

Title: _President, Back on Track Chiropractic, PC_

2248H.1

4