# Attachment B

## ASSET PURCHASE AND LICENSE AGREEMENT

THIS ASSET PURCHASE AND LICENSE AGREEMENT (this "Agreement") is dated the __3__ day of __January__, 2006, by and among **CHIROPARTNERS INC., DBA BACK ON TRACK CHIROPRACTIC AND WELLNESS CENTER** (the "Company"), an Alabama corporation with an office at 1600 N McKenzie St. Foley, AL 36535, **RICHARD RIZZUTO**, ("Rizzuto"), an individual residing at 26220 Terry Cove Dr., Orange Beach, AL 36561; **GRAVELY CHIROPRACTIC P. C.** (GCC), an Alabama corporation, with offices at 27250 Perdido Beach Blvd. Ste A, Orange Beach, AL 36561 and **STEVEN WAYNE GRAVELY**, ("Gravely") an individual residing at 2659 Hampton Park Cr. Foley, AL 36535.

RECITALS:

1. Rizzuto owns all the outstanding shares of the Company;

2. Gravely owns all the outstanding shares of GCC;

3. GCC desires to purchase and acquire substantially all the assets of Company used in connection with the operation and management of the office of the Company located at 27250 Perdido Beach Blvd. Ste A Orange Beach, AL 36561, ("Orange Beach Office") and Company desires to sell substantially all its assets used in connection with the Orange Beach Office to GCC; on the terms and subject to the conditions set forth herein;

4. Gravely is a doctor of chiropractic and has rendered chiropractic services to patients at the Orange Beach Office;

5. Rizzuto and Gravely will be benefited by the transaction set forth herein.

NOW THEREFORE, in consideration of the premises, the mutual promises and covenants set forth in this Agreement, specifically including the matters set forth in the recitals above, Company, Rizzuto, GCC, and Gravely hereby agree as follows:

## ARTICLE I
## PURCHASE AND SALE OF ASSETS AND PURCHASE PRICE

**Section 1.1 Purchase and Sale.** GCC hereby agrees to purchase and acquire from Company; and Company hereby agrees to sell, assign, transfer and convey to GCC, substantially all the assets and the business of Company related to the Orange Beach Office, (the "Assets") and more specifically described as follows; to-wit:

(A) All equipment, machinery, tools, furniture, furnishings and fixtures owned and used in the business of the Orange Beach Office, and more particularly described on Exhibit A appended to this Agreement and made a part hereof.

(B) All existing Orange Beach patient records and all prepaid services/escrow funds for patients identified to the Orange Beach Office.

(C) Telephone number and database software

(D) All goodwill and other intangible assets of the business of the Orange Beach Office.

**Section 1.2 <u>Assumption of Liability</u>.**

(A) GCC is liable and responsible for any liabilities, obligations or debts of Company relative only to the Orange Beach Office that arise or accrue out of acts or omissions occurring subsequent to the Closing Date (as hereinafter defined); including, without limitation, (i) malpractice claims asserted by a patient, or other tort claims or breach of contract claims asserted against Company relative only to the Orange Beach Office and arising out of acts or omissions occurring subsequent to the Closing Date; (ii) any amounts due or which may become due to any health reimbursement or payment intermediary, or other payment adjustments relative only to the Orange Beach Office and arising or accruing out of acts or omissions occurring subsequent to the Closing Date; and (iii) any form of health care reimbursement recapture whatsoever that arises from any period subsequent to the Closing Date which have been identified as being related to the Orange Beach Office; any of which are attributable to actions or omissions resulting from Gravely's practice of chiropractic medicine, or his operation or management of the Orange Beach Office subsequent to the Closing Date. Company will be responsible for all payroll and taxes related to payroll for all of the Orange Beach Office employees through the Closing Date.

(B) Except as expressly provided in this Agreement, GCC shall not assume, or in any way be liable for, any liabilities, obligations or debts of Company based on acts or omissions occurring prior to the Closing Date.

**Section 1.3. <u>Lease Agreement</u>.** As part of the transaction contemplated by this Agreement, Dr. Richard W. Rizzuto ("Lessee") and GCC will enter into a lease for the property on which the Orange Beach Office is located, and which is described as 27250 Perdido Beach Blvd., Ste A, Orange Beach, AL 36561. Such lease will be on terms described in Exhibit B "Lease Agreement".

**Section 1.4. <u>Nonexclusive License</u>.** Pursuant to the terms and conditions of Article III and this Agreement, Company and Rizzuto will grant to GCC the non-exclusive right to use the Trade Name "Back on Track Chiropractic & Wellness Center".

**Section 1.5 <u>Purchase Price and Payment Terms</u>.** GCC will pay to Company the purchase price of One Hundred Forty Five Thousand Dollars ($145,000.00) in the following terms: an earnest money deposit of Four Thousand Dollars ($4,000.00), the receipt of which is hereby acknowledged and GCC will pay to Company the sum of Twenty Thousand Dollars ($20,000.00) at Closing by bank certified, treasurers or

cashiers check or wire transfer and will execute a promissory note for the balance of One Hundred Twenty One Thousand ($121,000.00), said note to be due and payable in full on January 18, 2006 and secured by the Assets hereby conveyed.

## ARTICLE II
## CLOSING

**Section 2.1 Closing.** "Closing" shall mean the actual transfer and delivery of the Assets by the Company to GCC for the consideration herein stated. The Closing shall take place at 307 S. McKenzie Street, Suite 112, Foley, AL 36535 on January 3, 2006 (the "Closing Date") or as soon thereafter as any conditions precedent described herein have been met and complied with.

**Section 2.2 Actions of Company/Rizzuto at Closing.** At the Closing, Company/Rizzuto shall

(A) Execute and deliver Bills of Sale or other similar documents transferring the title to the Assets to GCC.

(B) Execute the Lease Agreement attached hereto as Exhibit "B" and referred to in Section 1.3 above.

(C) Execute and deliver such other documents as may reasonably be requested by GCC.

**Section 2.3 Actions of GCC at Closing.** At the Closing, GCC shall

(A) Deliver the sum of $20,000.00 to Company.

(B) Execute and deliver a promissory note to Company for the remaining balance of the Purchase Price in the sum of $121,000.00 which said note shall be due and payable in full on January 18, 2006.

(C) Execute the Lease Agreement attached hereto as Exhibit "B" and referred to in Section 1.3 above and pay to Rizzutto the deposit and first month's rent.

(D) Execute and deliver such other documents as may reasonably be requested by the Company/Rizzutto.

**Section 2.4 Termination of Prior Employment Agreement.** Upon Closing, the prior employment agreement between Gravely and Company/Rizzutto shall terminate and all obligations and restrictions contained therein shall be deemed null and void.

## ARTICLE III
## NONEXCLUSIVE LICENSE

Section 3.1 **Grant of Nonexclusive License**. Company, Rizzuto and certain others own the name "Back on Track Chiropractic & Wellness Center" and the logo associated with that name (collectively, "Trade Name"). Company and Rizzuto have the non-exclusive right to license such Trade Name, provided the licensee agrees to comply with the terms of the Trade Name Performance List ("List") provided in that certain "Trade Name Agreement" among the parties thereto, such List being attached hereto as Exhibit C and made a part hereof. Company grants to GCC a non-exclusive right to use the Trade Name. The use of the Trade Name is restricted to the rendering of chiropractic services at the Orange Beach Office. GCC will comply with the terms of the List.

Section 3.2 **Royalties**. GCC shall pay Company royalties at the rate of Two Thousand Dollars ($2000.00) per year, which shall be paid on January 1, 2007 (the first year's royalty being included in the purchase price paid hereunder) and on each anniversary date thereof for so long as GCC operates the Orange Beach Office using the Trade Name, provided no Event of Default (as hereinafter defined) has occurred ("License Period").

Section 3.3 **Restrictions**. In addition to the restriction set forth in the List, GCC agrees as follows:

(A) The Trade Name shall be used on all business advertising, which includes, but is not limited to, stationary, promotional and sales materials, Yellow Pages advertisement, and other advertising.

(B) The Trade Name shall not be modified.

(C) GCC shall not utilize the Trade Name for any other purpose

(D) GCC shall keep diligent watch to determine any infringement upon the Trade Name and shall immediately inform the company of such infringement.

Section 3.4 **Nontransferability**. The right granted in this Article shall not be transferable by GCC without the company's prior written consent.

Section 3.5 **Advertising**. GCC shall submit to Company, for prior approval as to compliance with this Article and the List only, all of GCC's proposed advertising with respect to the Orange Beach Office and samples of any merchandise to be sold or distributed under the Trade Name. Company's approval shall not be unreasonably withheld.

Section 3.6 **Termination**. GCC may terminate this License upon giving ninety (90) days prior written notice of such intention. Company may terminate this License

upon giving thirty (30) days prior written notice of the occurrence of any of the following events:

(A) GCC, Gravely or professional employees/independent contractors (i.e. chiropractor, medical doctor or massage therapist) of GCC conduct themselves in any manner which is detrimental to the Trade Name;

(B) GCC, Gravely or professional employees/independent contractors (i.e. chiropractor, medical doctor or massage therapist) of GCC shall be convicted of a felony, or any act of moral turpitude;

(C) GCC or Gravely shall file bankruptcy, or make an assignment for the benefit of creditors;

(D) GCC, or Gravely shall fail to make the payments required under this Article III or shall otherwise be in material breach of the terms of this Agreement.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

**Section 4.1 Seller's Representations and Warranties.** Company and Rizzuto, to the extent set forth specifically in this Section, represent and warrant to GCC that:

(A) Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Alabama, with the power and authority to own the properties now owned by it and to conduct the business presently being conducted by it.

(B) Company has good marketable title to the Assets, and as to the trade name, has the right to grant a license to that trade name;

(C) Company has good right to sell and convey the Assets;

(D) The Assets are free from all liens, claims and encumbrances of every nature;

(E) Company has filed all federal, state, county, and local income, excise, property, and other tax returns to date that are required to be filed by them, and such returns are true and correct in all material aspects. Company/Rizzutto shall file all necessary tax returns and pay, when due, all federal, state, county, and local income, excise, property, payroll and other taxes due by either party that arise out of the operation of the Orange Beach Office prior to the Closing Date. Company will be responsible for all accounts payable incurred up to the Closing Date. Provided, however, nothing contained herein shall be deemed to prohibit Company/Rizzutto from filing any and all extensions related to any tax return and/or to prohibit them from contesting or disputing in good faith any tax or account payable claimed to be due.

(F) The tax returns of Company have never been audited by the Internal Revenue Service or any state or local tax authority.

(G) Company has provided to GCC full access to the Assets, properties and relevant book and records of Company as to the Orange Beach Office. Company hereby warrants the completeness and correctness of all books and records.

(H) Company has furnished to GCC such financial and operating data and other information, and copies of documents with respect to the Assets and the Orange Beach Office as GCC has requested. Company hereby warrants the completeness and correctness of all such financial and operating data and other information provided, except to the extent that such financial information was prepared by Company's independent certified public accountant, in which event Company warrants that it provided complete and correct financial data to the accountant and, to the best of Company's knowledge, the financial information provided by the accountant is complete and correct.

(I) There are no claims, actions, suits, proceedings or investigations pending or, to the knowledge of the Company, threatened against or affecting Company or any of its assets, at law or in equity or before or by any court of federal, state, municipal or other governmental department, commission, board, agency, or instrumentality. Company is not subject to any continuing court or administrative order, writ, injunction or decree applicable to it or any of its assets.

**Section 4.2 GCC's Representation and warranties**. GCC represents and warrants to Company that

(A) GCC is a corporation duly organized, validly existing and in good standing under the laws of the State of Alabama, with the power and authority to enter into and perform this Agreement and the other instruments and agreements contemplated hereby.

(B) GCC has made, or caused to be made, such investigation of the Orange Beach Office, and Assets and the financial and legal condition of Company concerning the Orange Beach Office as GCC deems necessary or advisable to familiarize itself with the Orange Beach Office and /or matters relating to its history or operation.

(C) GCC acknowledges that it has inspected the Assets and is acquiring them "as is".

(D) GCC has been formed specifically for the purpose of acquiring the Assets and operating the Orange Beach Office, and has no financial or transactional history.

**Section 4.3 Representation and Warranties of Parties**. Company and GCC each represent and warrant the following to the other:

(A) This Agreement constitutes, and all agreements and documents contemplated hereby when executed and delivered pursuant hereto for value received will constitute, the valid and legally binding obligations of Company and GCC enforceable in accordance with their terms.

(B) The execution and delivery or this Agreement and the consummation of the transactions contemplated hereby do not (i) require the consent of any third party, or (ii) result in the breach of any term1 or provision of, or constitute a default under, or result in the acceleration of or entitle any party to accelerate (whether after the giving of notice or the lapse of time or both) any obligation under, or result in the creation or imposition of any lien, charge, or pledge, security interest other encumbrance upon any part of the property of Company or GCC pursuant to any provision of, any order, judgment, arbitration award, injunction, decree, indenture, mortgage, lease, license, lien, or other agreement or instrument to which Company or GCC are a party or by which either of them is bound, or violate, or conflict with any provision of the by-laws or articles of incorporation of the Company of GCC to the date of this Agreement.

(C) The party has full power, authority and legal right to execute and deliver this Agreement and this Agreement constitutes a valid and binding obligation of the party.

Section 4.4 **No Brokers**. No broker or finder has acted for Company or Buyer in connection with the transaction contemplated by this Agreement and no broker or finder is entitled to any brokers or finder's fee or other commission in respect thereof based in anyway on agreements, understandings, or arrangements with Company or Buyer.

Section 4.5 **Compliance with Laws**. Company and GCC each are in compliance in all material respects with all applicable federal, state, municipal and other political subdivisions or governmental agency statutes, ordinances and regulations, in respect to the ownership of its property and the conduct of its business.

## ARTICLE V
## INDEMNIFICATION

Section 5.1 **Indemnification by Company**. Except as otherwise provided in Section 1.2, Company shall be responsible for, and agrees to indemnify and hold GCC harmless against, and will reimburse GCC for any payment, loss, cost or expense made or incurred by or asserted against GCC at any time after the date of this Agreement in respect of any liability, claim, obligation, debt, expense or cost incurred, including taxes, arising out of the operation and management of the Orange Beach Office by Company prior to the Closing Date; excluding, however, any liability, claim, or obligation arising out of acts or omissions of Gravely while an employee of Company.

Section 5.2 **Indemnification of GCC**. GCC shall be responsible for, and agrees to indemnify and hold Company harmless against, and will reimburse Company for any payment, loss, cost or expense made or incurred by or asserted against Company at any time after the date of this Agreement concerning any liability, claim, obligation, debt,

expense or cost incurred, including taxes, arising out of the operation or the Orange Beach Office after the Closing Date.

Section 5.3 **Taxes/Expenses/Prorations**.

(A) Taxes. Company covenants and agrees to assume and pay all taxes, if any, on the transfer to GCC of the Assets hereunder.

(B) Expenses. Except as otherwise specifically provided in this Agreement, Company and GCC each will assume and pay all cost, liabilities and other obligations incurred by such party in connection with the performance of and compliance with all transactions, agreements and conditions contained in this Agreement to be performed or complied with, including legal and accounting fees.

(C) Adjustments. Taxes and other costs of the Orange Beach Office shall be adjusted and prorated as of the date of Closing.

## ARTICLE VI
## OBLIGATIONS AFTER CLOSING

Section 6.1 **Services of Rizzuto**. Rizzuto agrees to render chiropractic services to GCC at the Orange Beach Office on Tuesday afternoons and Thursday mornings for a minimum period of six (6) months after Closing. Rizzuto shall render such services as an independent contractor and shall receive as compensation for such services twenty-five (25%) percent of the fees collected for such services. The fees due Rizzuto for his services shall be paid to Rizzuto on the first pay period of the month following the collection of said fees. GCC shall have the right to terminate the services of Rizzuto for any reason prior to the expiration of said six month period so long as the following are met.

(A) A thirty (30) day notice is provided to Rizzuto of said termination; and

(B) Patients are converted properly to Gravely to avoid patient abandonment.

## ARTICLE VII
## COVENANTS

Section 7.1 **Covenants of GCC**. GCC covenants and agrees to the following during the License Term unless otherwise specifically stated:

(A) To provide to Company a certificate no later than (60) days after the end of each calendar year stating that GCC has paid its bills as they mature, including any applicable taxes, and is in compliance with all the terms and obligations of the Trade Name Performance List and Section 3.3 hereof;

(B) To provide free care for any existing patients on the date hereof who prepaid for chiropractic services until services covered by such prepayment are fulfilled,

provided, however, that any and all funds held in the Company bank account for the Orange Beach Office shall be the property of GCC and shall be transferred to GCC at the time of Closing along with accurate records reflecting patient name(s) and dollar amount(s) of such prepaid services relating to the Orange Beach office.

(C) To obtain and keep in effect malpractice insurance in amounts equal to $3 million total and $1 million per occurrence. GCC will provide a copy of certificate of insurance showing the effective dates of such coverage. Company has the right to contact GCC's insurance carrier to verify coverage and payment. If GCC fails to maintain such insurance coverage, Company has the right to pay insurance premiums on behalf of GCC. GCC shall promptly reimburse Company for all cost and expenses incurred by the Company within thirty (30) days for such costs and expenses, Company may terminate the License.

(D) To acquire and maintain, within a reasonable period of time after Closing, an X-Ray machine on the premises and keep such machine in working order during business hours.

(E) To operate the Orange Beach Office in accordance with the highest ethical standards of the profession;

(F) To assume a prorate share (currently one-half) of the debt for the Yellow Pages advertisement for chiropractic clinics using the trade name "Back on Track Chiropractic & Wellness Center" as may be in effect from time to time during the License Period. Such costs shall be divided equally among all licensees of the Trade Name in Baldwin County.

(G) To pay ad-valorem taxes on equipment.

(H) To file all health insurance claims under the name of Gravely or GCC, and not under the name of Company or Rizzuto.

(I) GCC shall notify Company and Rizzuto of a bona fide written offer to purchase the Orange Beach Office. Company and Rizzuto shall notify GCC within thirty (30) days after receipt of such notice whether Company and Rizzuto shall meet such offer, GCC, Company and/or Rizzuto, or an entity to be named by either of them, shall consummate the sale of the Orange Beach Office within sixty (60) days after Company and/or Rizzuto provided notice to GCC. Company and Rizzuto shall always have first right to re-purchase Orange Beach Office.

**Section 7.2 Covenants of Rizzuto and Company.** Rizzuto or Company, as indicated in this Section, covenants and agrees to the following:

(A) Neither Rizzuto or the Company will open a new office under the Trade Name to provide chiropractic services, or grant a license for use of the Trade Name to any other business, person or entity doing business, within ten (10) miles of GCC's

business in Orange Beach, Alabama for as long as GCC is doing business under said Trade Name.

(B) That Company and Rizzuto own and operate offices for the practice of chiropractic services in locations other than Orange Beach, Alabama. Company and Rizzuto agree that neither shall, directly or indirectly, own, establish, operate, manage, finance or participate in any manner in the ownership, establishment, operation, management or financing of a chiropractic business in which Rizzuto does not actively engage in the provision of substantial hands-on chiropractic services within ten (10) miles of the GCC's business in Orange Beach, Alabama for a period of three (3) years from the Closing date.

(C) Neither Company nor Rizzutto shall open an office or business for the practice of chiropractic services within ten (10) miles of GCC's business for a period of one (1) from the later of the Closing Date or the date Rizzuto ceases providing services at the Orange Beach Office pursuant to Section 6.1 hereinabove.

Section 7.3 **Covenant of Company, Rizzuto, GCC, and Gravely**. Company, Rizzuto, GCC and Gravely shall treat all information concerning this Agreement, except as shall be known in the chiropractic profession and the community, strictly confidential and shall disclose this information to third parties only upon the prior written consent of the other parties. Notwithstanding the previous sentence, the parties may disclose such information to governmental entities and financial institutions and the parties' respective accountants and attorneys as may be necessary or requested for tax, financing, permits, licenses, insurance and other similar business purposes.

Section 7.4 **Enforceability of Covenants**. That the covenants and restrictions contained herein are deemed reasonable and proper by the parties hereto for the protection of the respective party's interest in the favor of whom said covenant runs and said covenants are reasonable with respect to subject matter, time periods and geographical areas. If for any reason whatsoever, any one or more of the covenants contained herein or part thereof shall be held or deemed by a court or other competent authority to be inoperative, unenforceable or invalid because of subject matter, too extensive a geographic area or too long a period of time, any such covenant shall be deemed appropriately amended and modified in keeping with the intention of the parties to the maximum extent permitted by law. The unenforceability or invalidity of any one covenant or part thereof shall not render the remainder of such covenant or any of the other covenants inoperative, unenforceable or invalid.

## ARTICLE VIII
## DEFAULT AND ARBITRATION

Section 8.1 **Events of Default by GCC**. The following events shall constitute an Event of Default after Company provides notice of default to GCC and GCC has not remedied the default within thirty (30) days after such notice.

(A) Failure of GCC to make any payment due hereunder;

(B) Any violation of the terms of the License as provided in Article III of this Agreement.

(C) Any other material breach of the terms hereof; and

(D) Default in any payment due under the Lease Agreement.

(E)   GCC shall not be entitled to thirty (30) day notice of a default in the payment of the promissory note for the balance of the Purchase Price and in the event of a default in the payment of the promissory note for more than three (3) days past its due date, then same shall also constitute a default in the Lease and shall entitle Company/Rizzutto to immediate possession of the Demised Premises.

Section 8.2 <u>Rights in the Event of Default by GCC</u>. Upon the occurrence of an event of default by GCC, Company may terminate the License on written notice to GCC.

Section 8.3 <u>Events of Default by Company/Rizzutto</u>. The following events shall constitute an Event of Default by Company/Rizzutto.

(A) Breach of the covenants contained in Section 7.2 hereinabove by Company or Rizzutto; and

(B) Any other material breach of the terms hereof.

Section 8.4 <u>Rights in the Event of Default by Company/Rizzutto</u>. Upon the occurrence of an Event of Default by Company/Rizzutto, GCC, in addition to GCC's rights to seek recovery for any damages suffered as a result of such default pursuant to the provisions hereinbelow, GCC shall have the right to seek injunction and/or declaratory relief in a court of competent jurisdiction in Baldwin County, Alabama, to enjoin a violation or threatened violation of the covenants contained in Section 7.2 (A), (B) and (C) and/or determine the enforceability of said covenants

Section 8.5 <u>Arbitration</u>. All disputes, controversies, claims or differences which may arise between the parties hereto out of or in relation to or in connection with this Agreement or the breach hereof shall be finally settled by arbitration conducted in accordance with the Rules of the American Arbitration Association. Such arbitration shall take place in Baldwin County before three arbitrators, one selected by company, one selected by GCC and one selected by the two other selected arbitrators. Notwithstanding the determinations of the arbitrators all costs associated with the arbitration shall be borne equally by Company and GCC. The parties agree to arbitrate any dispute under this Agreement within sixty (60) days after a request by either party.

Section 8.6 <u>**Arbitration as Precondition to Proceeding**</u>. The parties hereto stipulate that submission of disputes to arbitration hereinabove and arbitration pursuant

thereto shall be a condition precedent to any suit, action or proceeding instituted in any court or before any administrative tribunal with respect to this Agreement. The arbitration provisions hereof shall, with respect to any controversy or dispute arising out of this Agreement, survive the termination or expiration of this Agreement.

Section 8.7 **Effect of Arbitration Decision**. Each of the parties hereto agrees that any judgment rendered by the arbitrators against it and entered as aforesaid in any court of record of the United States maybe executed against the assets of such party in any jurisdiction. By signing this Agreement, each party hereby irrevocably submits to the jurisdiction of any court of record of the United States or Territory in any legal actions or proceedings relating to such execution. Each party further irrevocably consents to the service of process out of any of the aforesaid courts in any such action or proceeding by the mailing of copies thereof by registered mail, postage prepaid, to it. The foregoing, however, shall not limit the right of either party to serve any legal action or proceeding or to obtain execution of judgment in any appropriate jurisdiction.

Section 8.8 **Governing Law, Venue and Jurisdiction**. If for any reason it is determined by a court of law or other governmental or quasi-governmental authority that this Article concerning arbitration is not enforceable, the parties agree that any suit, action or proceeding to resolve any dispute arising out of or in relation to or in connection with this Agreement or the performance thereof shall be brought in Baldwin County Alabama. This Agreement is subject to and shall be interpreted in accordance with the substantive laws of the State of Alabama: without regard to its laws concerning conflicts of law.

**ARTICLE IX**
**MISCELLANEOUS**

Section 9.1 **Notice**. Any notice required or permitted hereunder shall be in writing and shall be sufficiently given if personally delivered or mailed by certified or registered mail, return receipt requested, addressed as follows:

> If to GCC:      Dr. Steven Gravely
>                 2659 Hampton Park Circle
>                 Foley, AL 36535
>
> If to Company: Dr. Richard Rizzuto
>                 26220 Terry Cove Dr
>                 Orange Beach, AL 36561

(or to such other address as any party shall specify by written notice so given), and shall be deemed to have been delivered as of the date so personally delivered or mailed.

Section 9.2 **Execution of Additional Documents**. The parties hereto will at any time, and from time to time after the date of this Agreement, upon request of the other party, execute, acknowledge and deliver all such further acts and documents as may be

required to carry out the intent of this Agreement, and to transfer and vest title in Assets, and to protect the right, title and interest in and enjoyment of the Assets sold pursuant to this Agreement; provided, however, that this Agreement shall be effective regardless of whether any such additional documents are executed.

Section 9.3 **Binding Effect/Benefits**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, personal representative, and assigns. Anything contained in this Agreement to the contrary, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties hereto or their respective heirs, successors, personal representatives, and assigns, any rights, remedies, obligations or liabilities.

Section 9.4 **Entire Agreement and Modification**. This Agreement, together with the other documents contemplated hereby, constitutes the final written expression of all the agreements between the parties, and is a complete and exclusive statement of those terms. It supersedes all understandings and negotiations concerning the matters specified herein. Any representations, promises, warranties or statements made by any party hereto that differ in any way from the terms of this Agreement and other documents contemplated hereby, shall be given no force or effect. No addition to or modification of any provision of this Agreement shall be given no force or effect. No addition to or modification of any provisions of this Agreement shall be binding upon any party unless made in writing and signed by all parties.

Section 9.5 **Governing Law**. This Agreement shall be governed by and construed in accordance with the law of the State of Alabama exclusive of the conflict of law provisions thereof.

Section 9.6 **Survival**. All representations, warranties, covenants and agreements made by each party in this Agreement or in any certificate, document or list delivered by any such party pursuant to this Agreement shall survive Closing.

Section 9.7 **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which constitutes one and the same instrument.

Section 9.8 **Waivers**. The waiver by any party hereto of a breach of any provision hereunder shall not operate or be construed as a waiver of any prior or subsequent breach of the same or any other provision.

Section 9.9 **Merger of Documents**. This Agreement and all agreements and documents contemplated hereby constitute one agreement and are interdependent upon each other in all respects.

Section 9.10 **Severability**. If for any reason whatsoever, any one or more of the provisions of this Agreement shall be held or deemed to be inoperative, unenforceable or invalid as applied to any particular case or in all cases, such circumstances shall not have

the effect of rendering such provision invalid in any other case or of rendering any of the other provisions of this Agreement inoperative, unenforceable or invalid.

Section 9.11 **Performance**. In the event of a breach by any party of its obligations hereunder, the other party shall have the right, in addition to any other remedies which may be available, to obtain specific performance of the terms of this Agreement and the breaching party hereby waives the defense that there maybe an adequate remedy at law. Should any party breach its obligations under this Agreement, the prevailing party in such lawsuit shall be entitled to its reasonable attorney's fees and costs.

IN WITNESS WHEREOF, the parties have executed this Agreement and caused the same to be duly delivered on their behalf on the day and year hereinabove first set forth.

WITNESS:

CHIROPARTNERS INC.,
DBA: BACK ON TRACK
CHIROPRACTIC AND
WELLNESSCENTER

By: _____
Richard Rizzuto,
Its President/Shareholder

RICHARD RIZZUTO

WITNESS:

GRAVELY CHIROPRACTIC, P. C.

By: _____
Steven W. Gravely,
Its President/Shareholder

STEVEN W. GRAVELY

**EXHIBIT A**

**INVENTORY**

Chairs (10)

TV /VCR/DVD

View Boxes (1)

Phones (2)

Flex/Distraction Chiropractic Tables (1)

AM/FM Stereo (1)

Pitney Bowes Copier (1)

Exam Table (1)

Massage Chair (1)

Microwave (1)

Laptop Computer (1)

Laser Printer/FAX (1)

BACK ON TRACK Outdoor sign (1)

Credit Card Machine (1)

Fixtures/Office Supplies

## EXHIBIT C
## TRADE NAME PERFORMANCE LIST ("List")

1. "Back on Track," "Back on Track Chiropractic and Wellness Center" and the logo associated with that name (collectively, "The Trade Name") shall not be modified without the prior written approval of the Licensor.

2. The Trade Name must be used on all business advertising, which includes, but not limited to, stationary, promotional and sales materials, Yellow Pages, or other advertisements.

3. The Trade Name shall not be used for any purpose other than the performance of chiropractic and related services at the location set forth in the attached license agreement.

4. The Licensee shall keep diligent watch to determine any infringement upon the trade name and shall immediately inform the Licensor of such infringement.

5. The license shall not be assigned or transferred in any manner without the prior written consent of the Licensor, and shall not be transferred in any manner without the transferee or assignee specifically agreeing to abide by the terms of the List.

6. The Licensee shall not advertise using the Trade Name, without the prior written consent of the Licensor.

7. The license may be terminated by the Licensor immediately upon the occurrence of any of the following:

    a. Breach by the Licensee of any of the terms of the List
    b. Filing by the Licensee for bankruptcy, or assignment for the benefit of creditors, or knowledge in the community of the Licensee's inability to pay bills when due.
    c. Conduct by the Licensee, its owners or professional employees/independent contractors (i.e. chiropractor, medical doctor or massage therapist) in a manner that is detrimental to the Trade Name.
    d. Conviction of the Licensee, its owners or professional employees/independent contractors (i.e. chiropractor, medical doctor or massage therapist) of a felony, or any act of moral turpitude.

8. In the event of a breach by the Licensee of its obligations under this List, the Licensor shall have the right, in addition to any other remedies which may be available, to obtain specific performance of the terms of this List and the Licensee hereby waives the defense that there may be an adequate remedy at law. Should Licensee breach such obligation, Licensor shall be entitled to its reasonable attorney's fees and costs.

9. Licensee will obtain and keep in working order an x-ray machine on the premises of business.

10. Licensee acknowledges that the license is non-exclusive.

11. Licensee will not at any time knowingly do or cause to be done any act or thing that in any way impairs or tends to impair Licensor's right, title and interest in and to the Trade Name.

12. Licensee will not file an application with the United States Patent and Trademark Office for federal registration of the Trade Name. Licensee will not file an application with the Alabama Secretary of State or the applicable office of any other state for registration of the Trade Name.